## ELK COTTON MILLS v. GRANT.

1. The employment of a minor under the prescribed age in a factory, in disobedience of the statute prohibiting such employment, is negligence per se; and if injury to such child proximately results from the employment, a right of action in its favor arises.

2. The statutory prohibition against employing children under a prescribed age in a factory excludes the defense of the assumption by them of risks incident to such employment.

3. In a suit by a child alleging injury as the result of his employment in a factory in violation of a statute prohibiting the employment in factories of children under a prescribed age, if the injury was not the result of the employment, but of some wholly independent cause disconnected from his employment, there can be no recovery.

4. In such a case the defense that the child was guilty of such negligence as to prevent a recovery is also open to the defendant.

(a) Under the statute of this State, if the plaintiff is not guilty of such negligence as will prevent a recovery, but is guilty of some negligence, the doctrine of diminution of damages may also be invoked.

5. The diligence required of a child of tender years is not to be measured by the ordinary care required of an adult; but due care in such a child is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation.

6. Where suit was brought for a personal injury to a child, and on the trial, about two years and a half after its occurrence, the plaintiff testified in substance that by reason of the injury he lost his thumb and forefinger and about half of his right hand, that he could do a little work with that hand, that he was confined to the house for more than a week after he was hurt, and could do no work for two or three months, and that his injury still caused him pain at night, there was enough evidence to authorize a charge on the subject of pain and suffering, mental and physical, which he might have suffered in the past and which he might suffer in the future.

(a) This is true although the witness added to the testimony above mentioned, "My hand does not hurt now unless I hurt it in some way. My hand is not so easy to hurt."

7. None of the grounds of the motion for a new trial which are not specially mentioned require a reversal.

OCTOBER 15, 1913.

Action for damages. Before Judge Fite. Whitfield superior court. January 28, 1913.

"On January 18, 1912, Charlie Grant, by his next friend, brought an action to recover damages against the Elk Cotton Mills. After being amended, and after the sustaining of a demurrer to a portion of the petition, it alleged in substance as follows: The plaintiff, who was eleven years of age, was employed by the defendant in violation of the second section of the child-labor law of 1906 (Civil Code (1910), § 3144), prohibiting the employment, in any factory or manufacturing establishment, of any child under twelve years of age, except under certain specified circumstances not involved in this case. On May 10, 1910, he was employed to carry waste from the spinning-room of the mill, and the duties of his employment required him to go among the machines. While going through another room, he passed a machine called a finisher. He was a child of tender years, small for his age, and with less mental and physical capacity than the ordinary child of his years. He had been employed in the mill for only a short time, had never been employed in a cotton-mill before, and was unacquainted with the dangers of the machinery. In passing the finisher, he laid his hand on a rod to which a cog was attached, as he had seen other employees do, and as he had previously done with the knowledge of the defendant and its officers, agents, and employees. There were no proper safeguards to prevent injury from the machine. In some way his hand was drawn into the machine and crushed, so that he lost his thumb and forefinger and part of his hand, causing pain and suffering and decreased capacity to labor and earn money. These results are permanent.

The defendant admitted the employment of the plaintiff, and alleged: that it was at the special solicitation of his father, who was the boss of the spinning-room and had immediate control of the plaintiff; that there was no danger in a proper performance of the duties for which the plaintiff was employed; that it was unnecessary, in carrying out waste, to go through the room where the finisher was; and that the plaintiff had been warned to keep out of it. The other substantial allegations of the petition were denied.

The jury found for the plaintiff $2,000. The defendant moved for a new trial, which was denied, and it excepted.

*Maddox, McCamy & Shumate,* for plaintiff in error.

*M. C. Tarver,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. By the Civil Code of 1910, § 3143, it is declared that no child under ten years of age shall be employed or allowed to labor in any factory or manufacturing establishment in this State, under any circumstances. By section 3144 it is declared that no child under twelve years of age shall be so employed, or allowed so to labor, unless it is an orphan and has no other means of support, or unless a widowed mother or an aged or disabled father is dependent upon the labor of such child. In the latter event, the father is required to file in the office of the company or establishment a prescribed certificate from the ordinary. A disobedience of the act is made a misdemeanor. § 3149. Here the plaintiff was eleven years old. He was not an orphan, and there is no claim that he had a widowed mother or an aged or disabled father dependent upon him. On the contrary, the defendant set up that his father was employed in the defendant's factory. Under these circumstances, the employment of the plaintiff was a violation of the law.

The child-labor law was enacted for a useful purpose. It was intended to be obeyed. A violation of the statute by hiring the plaintiff, a boy eleven years of age (and not within the excepted class), to work in the defendant's factory, constituted negligence per se as to him, and authorized a recovery for a personal injury sustained by him as a proximate result of such employment. Where a statute prescribes an absolute duty for the benefit of a class of persons, the violation of the statutory duty resulting in injury to one of such persons authorizes a recovery without other negligence; and the expression "negligence per se" has quite generally been used to characterize such a breach of duty. It has often been so employed in this State. In 1 Thompson on Negligence, § 10, it is said, that "where the legislature of the State, or the council of a municipal corporation, having in view the promotion of the safety of the public, or of individual members of the public, commands or forbids the doing of a particular act, . . the general conception of the courts, and the only one that is reconcilable with reason, is that the failure to do the act commanded, or the doing

of the act prohibited, is negligence as mere matter of law, otherwise called negligence per se; and this, irrespective of all questions of the exercise of prudence, diligence, care, or skill; so that if it is the proximate cause of hurt or damage to another, and if that other is without contributory fault, the case is decided in his favor, and all that remains to be done is to assess the damages." While a few cases have held that the violation of a statutory duty is only "evidence" of negligence, and not negligence per se, such decisions, though rendered by courts of high standing, will not bear the test of reason; and this court has frequently held to the contrary. *Atlanta & West Point Railroad* v. *Wyly*, 65 *Ga.* 120; *Louisville & Nashville R. Co.* v. *Hames*, 135 *Ga.* 67 (4) (68 S. E. 805) ; 1 Hopkins' Pers. Inj. (2d ed.) §§ 18, 125.

2. The statutory inhibition under consideration necessarily excludes the doctrine of the assumption of risks of the employment, which might otherwise apply. To hold differently would be substantially to destroy the efficacy of the statute.

3, 4. There remain the questions whether the violation of the statutory duty was the proximate cause of the injury, and whether the plaintiff was guilty of such negligence as to debar him from a recovery, or to lessen the recovery, under our statute. If the breach of a statutory duty in no way proximately causes an injury, its violation will not authorize a recovery. To illustrate by reference to suits against railroad companies for personal injuries at road crossings, the law requires a railroad company to erect blow-posts at a certain distance from public-road crossings over its tracks, and requires the engineer to blow the whistle and slacken the speed in approaching such crossings. It has been held that a violation of these duties constitutes negligence per se as to one passing over such a crossing. If, however, an injury is not the result of the operation of the train at all, but results from some entirely different and disconnected cause, the violation of the duty would not authorize a recovery. It may be said that the mere failure to erect a blow-post, or to blow the whistle, does not, alone and of itself, injure one who may be on a crossing; but if he be injured by reason of the company's failure to obey the law enacted for his protection, it is enough.

Or suppose the company was negligent, but the injured person himself was guilty of such negligence as to debar him from re-

covery although the defendant was negligent, then he could not recover. This has often been recognized in suits against railroad companies, and it is generally true in other cases. The violation of the statutory duty is negligence per se. But if negligence, whether per se or otherwise, does not proximately cause the injury, there can be no recovery on account of it. Or if the injured person is guilty of such negligence as to preclude a recovery, there can be none.

As has been more than once noticed in opinions of this court, the words "contributory negligence" are generally employed to express a degree of negligence which will preclude a recovery. In this State, unfortunately perhaps, those words are commonly used to express negligence which will diminish, but not defeat, a recovery, under the doctrine of comparative negligence, which is recognized here. But if the injured person causes the injury by his own negligence, or if the plaintiff by the use of ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. Civil Code (1910), § 4426.

In applying these principles to the child-labor law now under consideration, and in considering the subject of proximate cause, the great objects of the statute should not be overlooked. It must be borne in mind that a leading purpose of the legislature was to protect the children of the State of tender years, and to prevent the employment in mills, manufacturing establishments, and factories, with certain exceptions, of those under the prescribed age, whom the lawmakers regarded as so immature and indiscreet as to make it wrong to expose them to the dangers incident to such a place. The legislature must have known that little children might not have the caution and prudence of older persons, and might yield to childish impulses in dangerous places, and, no doubt for this and other reasons, that body sought to prevent their being employed in places which it so considered.

Of course it may be argued that the contract of employment did not crush the boy's hand, that the waste which he was employed to remove did not injure him, but that he was injured by a machine which he was not employed to operate. But such arguments do not conclusively show that the unlawful employment in the factory was not the proximate cause of the injury. The real question is

whether the employment at that place, which was in itself negligence in law, was the cause of which the injury was the consequence. And in determining this, as well as whether the boy's own negligence was such as to preclude a recovery, his age is a matter to be considered. If the statute had been obeyed, would this have prevented the injury? Was there any causal connection between the disobedience of the law and the injury? Was there any intervening cause? Was his conduct such as to prevent, or, if not, then to diminish, a recovery? These are practical questions. If the plaintiff should frame a count upon this statutory negligence, and also one upon negligence under the general law apart from the statute, as to the latter count the general law would prevail.

In Queen *v.* Dayton Coal & Iron Co., 95 Tenn. 464 (32 S. W. 460, 30 L. R. A. 82, 83, 49 Am. St. R. 935), where it was claimed that a boy, employed in a mine in violation of the statute, jumped from a moving car, under the command of another employee whom he had been instructed to obey, and was injured, the Supreme Court of Tennessee held that such employment was negligence per se; and a recovery was sustained. It was said: "Of course, we do not hold that, if the boy had died of organic disease of the heart, or from a stroke of paralysis, or from some cause wholly disconnected with the employment, the company would have been liable in damages simply on account of the employment in violation of the statute. But we do hold that the breach of the statute is actionable negligence whenever it is shown that the injuries were sustained in consequence of the employment." In Nickey *v.* Steuder, 164 Ind. 189 (73 N. E. 117), though a child was wrongfully employed, the injury resulted from the act of a third person who had come upon the premises to obtain wood, and who carelessly threw a stick of wood against the child; and it was held that the employment was not the proximate cause of the injury. These are illustrative cases. In the latter it was held that there was an independent intervening cause. There are other cases, cited below, in which it was held that the negligence or childish pranks of others in the same employment would not necessarily prevent the unlawful employment from being the proximate cause of the injury. When there is evidence tending to show that the injury results from the employment, though the child may have also been guilty of negli-

gence in yielding to childish impulses, the questions of proximate cause and of whether the negligence of the child is such as to prevent a recovery are generally for the jury. / One or two courts have declared that if the child employed in violation of the statute was injured by a machine which it had been hired to operate, proximate cause could be declared as matter of law.

We will not consider at length the various cases on this subject. There is some conflict. A few of the decisions have confused the question of the existence of negligence on the part of the defendant or that of the plaintiff with the question of proximate cause, and there are some which are not satisfactory to us. But we believe we have followed the current of authority, and have based our decision on sound principles. See Leathers v. Blackwell's Durham Tobacco Co., 144 N. C. 330 (57 S. E. 711, 9 L. R. A. (N. S.) 349, 364, et seq., and note), where Rolin v. R. J. Reynolds Tobacco Co., 141 N. C. 300 (53 S. E. 891, 7 L. R. A. (N. S.) 335, 8 Ann. Cas. 638.), is discussed; Starnes v. Albion Mfg. Co., 147 N. C. 556 (61 S. E. 525, 17 L. R. A. (N. S.) 602, 15 Ann. Cas. 470) ; Marquette Third Vein Coal Co. v. Dielie, 208 Ill. 116 (70 N. E. 17) ; Morris v. Stanfield, 81 Ill. App. 264; Sterling v. Union Carbide Co., 142 Mich. 284 (105 N. W. 755) ; 4 Labatt on Master & Servant (2d ed.), § 1571, and notes.

The decision of the Court of Appeals in *Platt* v. *Southern Photo Material Co.*, 4 *Ga. App.* 159 (60 S. E. 1068), is in general harmony with what is said above. We are not here called on to deal with the question whether proof that the child is in fact above the designated age will prevent the employment without filing the prescribed affidavit from being negligence per se.

5. The diligence required of a child of tender years is not to be measured by the ordinary care required of an adult; but due care in such a child is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation. *Western & Atlantic Railroad Co.* v. *Young*, 81 *Ga.* 397 (7 S. E. 912, 12 Am. St. R. 320) ; Civil Code (1910), § 3474.

6. The evidence authorized a charge on the subject of recovery for pain and suffering, mental and physical, which the injured boy had endured and such as he might endure in the future. At the trial, nearly two years and a half after the injury, the plaintiff testified, that, by reason of it, he lost his thumb and forefinger and

about half of his right hand; that he could do a little work with that hand; and that he was confined to the house for more than a week after the injury, and thought it was two or three months later before he could do any work. He added: "My injuries hurt of a night, but my hand does not hurt now unless I hurt it in some way. My hand is not so easy to hurt." *Central Railroad &c. Co.* v. *Lanier,* 83 *Ga.* 587 (10 S. E. 279); *Macon Railway &c. Co.* v. *Streyer,* 123 *Ga.* 279 (51 S. E. 342).

7. The verdict was supported by the evidence. If there were any inaccuracies in the charge, they were not such as to require a new trial. It might have been fuller and more explicit, but there seems to have been no request to charge more fully; and, under the facts of the case, we do not think there should be a new trial.

*Judgment affirmed. All the Justices concur.*