### SORRELS v. MATTHEWS.

A father can not maintain a suit for a wrong done to his minor child, unless he has incurred a direct pecuniary injury therefrom, by reason of loss of service or expenses necessarily consequent thereon. It follows that if a teacher of a public school is liable to any one for expelling a pupil therefrom, an action therefor will not lie in favor of the father of the pupil, when he has thereby suffered no direct pecuniary loss.

Argued July 1,—Decided August 15, 1907.

Action for damages. Before Judge Wright. Randolph superior court. November 8, 1906.

J. M. Sorrels brought an action against C. R. Matthews, teacher of a public school, for damages in the sum of $300, for expelling the plaintiff's children from the school. The petition was dismissed at the trial term, on a motion in the nature of a general demurrer,

and the plaintiff excepted. The substance of the petition was: The defendant contracted with the board of education of Randolph county to teach a public school at Benevolence in that county, for six months, beginning December 1, 1905. He also agreed with the trustees of the Benevolence Academy "to carry on, in conjunction with said public school, a school in said Benevolence Academy extending two months longer than said public-school term, and in which other branches were taught than those taught in the public school; and under an arrangement of some sort between the trustees or between him and said trustees, it was arranged to pay his salary for this extra time by levying an assessment on every pupil who entered said school, regardless of whether entered for the whole or only the public term, at the rate of from five to seven dollars." The plaintiff had three children of school age, entitled to enter said public school. The school was opened by the defendant in October or November, 1905, and at the beginning of the public term thereof, when the plaintiff had the right to enter his children, he entered them in said public school, notifying the defendant, at the time, that they were being entered for the public department and for the public term only, and for the purpose of receiving such advantages alone as the public school afforded. Soon after the children were thus entered, the chairman of the board of trustees of said academy demanded of plaintiff sixteen dollars, for the assessment levied by said board of trustees on each pupil. The plaintiff "declined to pay the same, and the demand was several times afterwards made on [him] by some member of said local board of trustees, which [he] as often refused to pay." The chairman of the board of trustees then notified the plaintiff that unless said sum was paid his children would be sent home. The plaintiff not having paid the amount so illegally exacted, the defendant, about December 13, 1905, "publicly and in presence of said school, for no other cause or reason than petitioner had refused to yield to said illegal exaction, dismissed, expelled, and sent petitioner's said children home and afterwards refused to receive them or to teach them in said public school, unless he would pay the assessments imposed upon him by the board of trustees of said academy." The defendant, in expelling plaintiff's children, acted with full knowledge that neither the trustees nor he had any right to make such assessments and to refuse to

receive them back in school, and "the acts of said Matthews in said matter were arbitrary, willful, and malicious." In order to have his children restored to the school, it was necessary for the plaintiff to mandamus the county board of education, and by this means the children were put back in the school on January 18. 1906. The plaintiff, "by reason of the loss of time from said school by his said children and the expense of having to pay attorney's fees, . . was injured, and by the wrong and humiliation put upon his unoffending children [he] was humiliated and his feelings greatly wounded. Besides this the action of said Matthews put him in the attitude of one who refused to pay his obligations, and the acts of said Matthews were wilfully and maliciously designed to put him in that false light before the public, and by such acts petitioner says that he has been injured and damaged in the sum aforesaid."

*M. C. Edwards,* for plaintiff.

*Glessner & Pottle,* for defendant.

FISH, C. J. (After stating the facts.) One ground of the motion to dismiss the petition was that it set forth no right of action in the plaintiff. In our opinion, this ground was well taken, and therefore the necessity of dealing with any other question raised by the record is obviated. In no case can a father maintain an action for a wrong done to his minor child, unless the father has incurred some direct pecuniary injury therefrom, in consequence of loss of service, or expense necessarily consequent thereon. *Bell* v. *Wooten,* 53 *Ga.* 684; *Central Railroad Co.* v. *Brinson,* 64 *Ga.* 475; *Frazier* v. *Georgia Railroad Co.,* 101 *Ga.* 70 (28 S. E. 684) ; *Hurst* v. *Goodwin,* 114 *Ga.* 586 (40 S. E. 764, 88 Am. St. R. 43). Civil Code, §3816, providing that "Every person may recover for torts committed to himself, or his wife, or his child, or his ward, or his. servant," is merely declaratory of the common law. *Frazier* v. *Georgia Railroad Co.,* 101 *Ga.* 70 (28 S. E. 684). At common law the parent's right to recover for a tort to his minor child is, by legal fiction, predicated upon the relation of master and servant. Ib., and cases cited. In *Spear* v. *Cummings,* 23 Pick. 224 (34 Am. Dec. 53), it was held that "The teacher of a town school is not liable to any action by a parent, for refusing to instruct his children." This ruling was put upon the ground that there is no privity of contract between the parent

and the teacher, the latter being responsible on his contract only to the town by which he is employed and paid. In Sherman *v.* Charlestown, 8 Cush. 161, Shaw, C. J., referring to the case just cited, in which he also delivered the opinion, said that the court were of opinion, among other reasons, that the action was misconceived, "because the father is not the person injured and entitled to recover damage in his own right." In Stephenson *v.* Hall, 14 Barb. 222, it was held that an action will not lie in behalf of a parent, against the town superintendents of public schools, for expelling and excluding the plaintiff's minor child from the common schools, nor for damages sustained by the parent in bringing an appeal to the State superintendent of common schools, to get such child reinstated in the schools. In the opinion in that case, Allen, J., used this language: "Can it be said that the plaintiff has an interest as well as a right to have his daughter in the school, that by reason of the education she was receiving she was being prepared to render herself more useful, and that her services during her minority would thus become more valuable to her parent? This would be carrying the doctrine much too far, in my opinion, in order to sustain an action of this kind—an action clearly not to be favored, unless in support of an undoubted principle of law." In Donahoe *v.* Richards, 38 Me. 376, it was held that the parent of a child expelled from a public school by order of the superintending school committee can maintain no action against the members of the committee for such expulsion. In delivering the opinion, Appleton, J., said: "In this case, there is no act done by which the ability of the child to render service is diminished. The school is for her benefit and instruction. The education is given to her; and if wrongfully deprived thereof, the loss of such deprivation falls on her. The wrong committed, the injury done, is done to her alone—and if her rights have been violated, she alone is entitled to compensation." So, in Boyd *v.* Blaisdell, 15 Ind. 73, where the plaintiff sued the school trustees of a township for refusing admission to his children into a district school in such township, it was held that the plaintiff could not maintain the action, as the parent can only sue for such injuries to his child as occasion loss of service; for all other injuries the child must sue.

All the cases cited, holding that a parent can not recover for

the expulsion of his child from a public school, were put upon the common-law doctrine (Hall v. Hollander, 4 Barn. & Cress. 660, 5 East, 45; Flemington v. Smithers, 2 Carr. & Payne, 292, 578; *Frazier* v. *Georgia Railroad Co.*, 101 *Ga.* 70 (28 S. E. 684), and citations) that a parent can not maintain an action for an injury to his child which does not result in loss of service, or cause expense to the parent. We have been able to find only one reported case out of harmony with this rule, viz., Roe v. Deming, 21 Ohio St. 666, where it was held: "The father of a child entitled to the benefits of the public school of the sub district of his residence may maintain an action against the teacher of the school and the local directors of the sub-district, for damages for wrongfully expelling the child from the school." There was no further opinion rendered, and no authority cited. We do not agree to the soundness of this dictum. Counsel for plaintiff in error cites the case of *Board of Education of Cartersville* v. *Purse*, 101 *Ga.* 422 (28 S. E. 896, 41 L. R. A. 593, 65 Am. St. R. 312), admitting, however, that "The *Purse* case did not decide the question involved here, but [contending] the analogous line of reasoning would establish the soundness of our contention." In that case it was held, that a board of education having the charge and control of a system of free schools established by law and supported by taxation has the right to suspend from attendance upon school children whose parent, in undertaking to interfere with the discipline of a teacher over one of the children, enters the schoolroom of such teacher, during school hours, and, in the presence of the assembled pupils, is guilty of conduct toward such teacher which is subversive of the discipline of the school. The line of reasoning in the opinion in that case, delivered by Mr. Justice Cobb, led to the conclusion that "It would be contrary to the policy of our law, based as it is upon the common law, to bestow upon the child in the matter of its education any right independent of the parent." From this, counsel argues that it follows that when a child is wrongfully expelled from a public school, the right of action for such expulsion is in the parent, and not in the child. But the very opinion upon which counsel relies recognizes that there is a right of action in a child for his wanton and malicious expulsion or exclusion from a public school, in which he has been lawfully entered by his parent; and authorities to this effect are there cited. On

page 444, the learned Justice said: "While it is the act of the parent or guardian which places the child in the school and puts him in a position where he can obtain the benefits of the system, this does not prevent a duty from arising on the part of the school authorities towards the child to abstain from unlawful conduct which would deprive the child of the benefit which the act of the parent has secured to him. The moment the child is placed in school this duty arises. A breach of this duty will be a tort for which the child can recover in a proper action against the person wantonly and maliciously depriving him of the benefits which he would receive from the school. . . Out of this breach of duty damage arises to the parent, as well as to the child. The parent therefore has the right to appeal to the courts to compel the child to be admitted or reinstated, as the case may be, and also to appeal to the courts by his action for damages for the amount which he would be required to expend in the education of his child. The child would also have a right against the individual thus wantonly and maliciously depriving him of the benefit which is secured to him by the law in the event the parent sees proper to enter him in the school." The same learned Justice, in the opinion rendered in *Hurst* v. *Goodwin,* 114 *Ga.* 585 (40 S. E. 764, 88 Am. St. R. 43), said: "It does not, however, follow that the right of action for injuries of every character to a minor child is in the father alone. If the injury is one from which the father does not sustain any damage, that is, which does not destroy or impair the ability of the child to render services to the father, there is no right of action in the father for the wrong done the child." In the case with which we are dealing, if under the facts alleged a right of action existed, it was in the children, not in the father, and it is their right, not his, which he is seeking to exercise in his own behalf. He makes no claim for money expended in the education of his children, in consequence of their expulsion from the public school. Indeed his petition indicates that he spent no money for this purpose, as it shows that they were only out of the school about a month, during which time he was trying to get them reinstated therein. There is no allegation that he was put to any other expense by reason of their being expelled from the school. It is true that it is alleged that by reason of his having to pay attorney's fees he was injured, but what he paid such

fees for is not alleged, nor the amount which he paid, nor that they were reasonable, nor whether the fees referred to were in the present case or in some other. Of course, in no event could he recover any attorney's fees for which he became liable in a case in which he sets out no cause of action. The petition was properly dismissed upon the demurrer.

*Judgment affirmed. All the Justices concur.*